UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TONI McCOLLOM,                      )
        Plaintiff,        )
                                    )
                                    )
      v.                            )   Civil Action No. 11-30079-KPN
                                    )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
        Defendant          )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
ORDER REVERSING THE COMMISSIONER'S DECISION and
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE
COMMISSIONER (Document Nos. 12 and 16)
June 14, 2012

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 405(g). Toni McCollom ("Plaintiff") asserts that the Commissioner's decision denying her such benefits -- memorialized in an October 25, 2010 decision of an administrative law judge -- is in error. She has filed a motion to reverse the Commissioner's decision and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny the Commissioner's motion and allow Plaintiff's motion to the extent it seeks a remand.

I.  STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  See 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion.  *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  *Rodriguez,* 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  See *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing."  42 U.S.C. § 405(g).

II.  BACKGROUND

On January 15, 2009, Plaintiff filed for SSDI benefits.  (Administrative Record ("A.R.") at 116-17.)   At the time, Plaintiff claimed that she was disabled due to constant pain stemming from bone spurs, arthritis, chronic disc disease, sacroiliac joint injury, fibromyalgia, anxiety and depression, back injuries, chronic bronchitis, lyme disease and pluresy.  (A.R. at 155.)  Despite weight loss of over fifty pounds and surgery on December 18, 2009, to relieve her persistent lumbar pain, Plaintiff claims that she continues to suffer.  (A.R. at 408-13, 431-34, 440-41.)  After Plaintiff's claim was denied both initially and upon reconsideration, she requested a hearing, which was held before an administrative law judge ("ALJ") on September 2, 2010.  (A.R. at 100-04.)  Both Plaintiff, fifty years old at the time, and a vocational expert ("VE")  testified.  (A.R. at 25.)

In a decision dated October 25, 2010, the ALJ denied Plaintiff's claim.  (A.R. at 11-24.)  On February 2, 2011, the Commissioner's Decision Review Board informed Plaintiff that it had selected the decision for review.  (A.R. at 1-3.)  However, because the Board failed to act within the ninety days allotted, the ALJ's decision became final.  In due course, Plaintiff filed the instant action.  The Commissioner then compiled the administrative record and the parties submitted the cross-motions currently at issue.

### III. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to the expiration of that status, was under a disability.  42 U.S.C. § 423(a)(1)(A) and (D) . The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if [her] physical and mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed?  If [s]he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which significantly limits [the claimant's] physical or mental capacity to perform basic work-related functions."  If the claimant does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1?  If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
>         . . . .
>
> Fourth . . . does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past?  If

>
> not, [s]he is not disabled. If so, the agency asks the fifth
> question.
>
> Fifth, does the claimant's impairment prevent [her] from
> performing other work of the sort found in the economy? If
> so, [s]he is disabled; if not, [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (question 1); Plaintiff suffers from "severe" impairments, namely, degenerative disc disease, de Quervain's tenosynovitis affecting the left wrist, fibromyalgia and depressive disorder, but these impairments do not meet or medically equal a listed impairment (questions 2 and 3); Plaintiff cannot perform her past work of sales clerk, counselor, waitress or janitor, but she has the residual function capacity ("RFC") to perform light work, subject to certain limitations, that exists in significant numbers in the national economy (questions 4 and 5). As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

## IV. DISCUSSION

Plaintiff essentially raises two challenges to the ALJ's decision. First, Plaintiff contends that the ALJ improperly dismissed assessments from both her treating physicians and state agency physicians; relatedly, she argues that the ALJ, after allotting so little weight to these reports, ultimately based her analysis of Plaintiff's functional capacity on her own personal assessment. Second, Plaintiff argues that the ALJ's hypothetical question and RFC determination differed substantially and were

both impermissibly vague. In response, the Commissioner asserts that the record supports the ALJ's findings. The court finds Plaintiff's first argument particularly persuasive and, on that basis alone, will grant her motion to remand.

A. Plaintiff's Treating Physicians

An administrative law judge must give controlling weight to a treating physician's opinion when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). When an administrative law judge does not accord a treating physician's opinion controlling weight, he or she must consider the length, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the record as a whole, the treating source's area of specialization, and any other relevant factors to determine the weight the opinion deserves. 20 C.F.R. § 404.1527(c)(2)-(6).

Here, Plaintiff argues that the ALJ provided insufficient grounds for discounting the assessments provided by Plaintiff's treating physicians, Drs. Marc Linson and David Popkin. On February 16, 2010, Dr. Linson, who was Plaintiff's spinal surgeon, determined that Plaintiff's symptoms were so severe as to frequently interfere with her attention and concentration. (A.R. at 426.) Dr. Linson further noted that, if employed, Plaintiff was likely to be absent from work more than three times per month. (A.R. at 430.) After examining Plaintiff approximately three months later, on May 3, 2010, Dr. Linson noted that she continued to experience back and neck pain and that "[t]ime and patience [are] advised." (A.R. at 432.)

The ALJ found Dr. Linson's conclusions regarding Plaintiff's physical limitations inconsistent with his other notes, which suggested that her limitations "may not be permanent." (A.R. at 20.) The ALJ, however, did not adequately describe these inconsistencies. In both May and March of 2010, Dr. Linson had noted that Plaintiff continued to experience pain in her back, observations that support his findings only two months earlier. (A.R. at 432-33). He also noted that Plaintiff suffered "increased thoracolumbar pain" and diagnosed her with multi-level degenerative disc disease. (Id.) To be sure, Dr. Linson's recommendation -- that "[t]ime and patience" might aid Plaintiff's ailments -- could suggest continued improvement, but the ALJ did not even allude to this statement. In addition, Dr. Linson's few hints that Plaintiff may have improved, taken in the context of his consistent observations of pain, provided insufficient support for the ALJ's cursory analysis; and nowhere did the ALJ clarify how the "permanence" of Plaintiff's limitations would affect her eligibility for SSDI.

In the court's view, the ALJ's finding with respect to Dr. Linson is, at best, ambiguous. In such instances, remand for further explanation is required. *See Custodio v. Astrue*, 2010 WL 3860591 at *2 (D. Mass. Sept. 27, 2010) ("[A]n ALJ must explain the basis for [her] findings. Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand.") (internal citation omitted).[1]

---

[1] The ALJ did allude to credibility issues when discussing Plaintiff's symptoms of pain, mentioning that Plaintiff had driven at least six hours to various medical appointments over the prior week, a matter only briefly noted at the hearing. (A.R. at 46-49.) According to the ALJ, "if [Plaintiff] were truly in excruciating pain, constantly, . . . she would not be able to drive the distances she claims she drives." (A.R. at 15.) In

The ALJ's findings with respect to Dr. Popkin were deficient as well. Dr. Popkin, who treated Plaintiff from 2007 to 2009, stated in March 2009 that he believed her "multiple medical problems disable her from being able to perform any kind of work." (A.R. at 359.) The ALJ, however, found this statement inconsistent with "other progress notes, which indicate that the claimant's symptoms of pain improved with surgical intervention and medication." (A.R. at 18.)

Although she did not pinpoint which progress notes supported her analysis, the ALJ was possibly referring to the opinions of Drs. Linson and Ian Schein, the only two doctors who provided feedback on Plaintiff's progress following surgery. The court, however, has been unable to identify any inconsistencies between these opinions and Dr. Popkin's findings. Granted, on June 30, 2010, Dr. Schein, who is Plaintiff's primary care physician, indicated that medication for her back pain "helps," but such a general statement of improvement does not negate Dr. Popkin's findings. (A.R. at 448-51.) Indeed, Dr. Schein had recorded that Plaintiff's pain merited a high rating of 8 or 9 out of 10 only a month earlier. (Id.) For his part, Dr. Linson continued to make note of Plaintiff's back pain in both March and May of 2010, observations which support Dr. Popkin's conclusion. (A.R. at 432-33.) In any case, it is doubtful that the ALJ wished to discredit Dr. Popkin's recommendation based on Dr. Linson's opinion which, ironically, also received little weight.

---

the court's opinion, the ALJ's choice to engage in such speculative analysis is troubling; the ALJ cited no medical support, and at no point had any of the physicians, treating or otherwise, mentioned how Plaintiff's ailments might affect her driving capability.

In the end, the ALJ summarily concluded that "the objective medical evidence of record" contradicted Drs. Linson's and Popkin's opinions. (A.R. at 18, 20.) As Plaintiff points out, however, the ALJ did not identify those inconsistencies. (Id.) To be sure, an administrative law judge may resolve evidentiary conflicts in the medical record or conclude that a doctor's testimony is not supported by medical findings, *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 223 (1st Cir. 1981), but vague allusions to the record as a whole, as occurred here, do not permit meaningful review. *See Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) ("[I]t is well settled that administrative agencies must give reasons for their decisions.").

In an attempt to remedy the generalizations in the ALJ's decision, the Commissioner, in his brief, proffers a number of perceived inconsistencies in the reports of Drs. Popkin and Linson. The court, however, is reluctant to affirm the ALJ's decision on grounds different than those which she herself advanced. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (holding that the agency's lawyer may not defend the agency's decision on grounds the agency did not employ). In short, the court sees no reason to accept the *post hoc* rationale now offered by the Commissioner.

B.  State Agency Physicians

Plaintiff also persuasively argues that the ALJ improperly dismissed the opinions of two state agency reviewing physicians, Drs. Meghana Karande and Elaine Hom. Generally, a nonexamining source will receive less weight than a source who has examined the claimant. *See* 20 C.F.R. § 404.1527(c)(1). Nevertheless, the opinions of

nonexamining sources are still entitled to some weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rodriguez*, 647 F.2d at 223 (citation omitted). And while findings from state agency consultants are not binding, administrative law judges may not ignore their opinions and, furthermore, must explain the weight given to those opinions. *See* SSR 96-9P, 1996 WL 374180 at *2 (July 2, 1996). *See also* 20 C.F.R. § 404.1527(e)(2)(i)-(ii); *Quigley v. Barnhart*, 224 F. Supp. 2d. 357, 368 (D. Mass. 2002) (finding that administrative law judge's failure to assess reports from a state agency medical consultant was in error). In doing so, the administrative law judge must consider many of the same factors considered for a treating source: supportability and consistency with the rest of the record, the source's area of specialization, and any other relevant factors. *See* 20 C.F.R. § 404.1527(c)(2)(i)-(6). In addition, the administrative law judge may consider whether the nonexamining sources have provided explanations for their opinions. *See* SSR 96-9P, 1996 WL 374180 at *2 (July 2, 1996).

      Here, the ALJ simply concluded that neither Dr. Hom nor Dr. Karande examined the claimant in person and that their findings were contrary to the medical evidence of record. As Plaintiff notes, however, the ALJ failed to explain why Drs. Karande and Hom received less deference than two other nonexamining physicians, Drs. Langer and Robbins, whose opinions received substantial weight because they were deemed "familiar with SSA policy and regulations" and their reports were based on "the complete documentary record." (A.R. at 22.) All state agency physicians, of course, should be presumed familiar with SSA policy and Dr. Karande, for one, reviewed the

evidence through April 28, 2009, less than two weeks before Dr. Langer's review on May 7, 2009.

As the Commissioner asserts, however, the ALJ also opined that Dr. Karande's analysis was inconsistent with the objective medical record, which revealed only "mild spondylosis and some degenerative disc disease at L4-5." (A.R. at 19). However, the ALJ failed to identify any portion of the medical record to bolster her contention that such diseases provided insufficient support for Dr. Karande's recommendation for sedentary, rather than light, work. Indeed, the ALJ never explained why the objective medical record ran contrary to that recommendation.

Although an administrative law judge is free to consider medical findings when analyzing a claimant's functional capacity, he or she may not, as was done here, make medical judgments which require competence exceeding a lay person's knowledge. *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). Suffice it to say, a lay person is unlikely to know how to interpret magnetic resonance imaging results of an individual's spine and, furthermore, use those results to determine the credibility of a physician's analysis. While the Commissioner now proffers other reasons for granting less weight to Dr. Karande's opinion, the court, as stated above, is reluctant to affirm the ALJ's decision on grounds different than those asserted therein. *See Parker*, 597 F.3d at 922 (7th Cir. 2010).

## V. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings, to the extent it seeks a remand for a further hearing, is ALLOWED, and the Commissioner's

cross-motion to affirm is DENIED.

  IT IS SO ORDERED.

June 14, 2012

              /s/ Kenneth P. Neiman

              KENNETH P. NEIMAN

              U.S. Magistrate Judge